UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                        Plaintiff,

                                                        **DECISION AND ORDER**
            v.                                             11-CR-290-A

SHANE TAYLOR,

                                        Defendant.
_____

        Before this Court is the Government's request for a stay of a Decision and

Order (D&O) issued by Magistrate Judge Jeremiah J. McCarthy (Dkt. 111)

authorizing Defendant's release pending a revocation hearing regarding his alleged

violation of the terms and conditions of his supervised release.  For the reasons

which follow, this Court rejects Judge McCarthy's D&O and hereby **ORDERS** that

Defendant be **DETAINED** pending his revocation hearing.

## <u>BACKGROUND</u>

        On June 18, 2015, Defendant appeared before this Court for sentencing on

his prior plea of guilty to one count of possession of child pornography, in violation of

18 U.S.C. §2252A(a)(5)(B).  At that time, this Court sentenced Defendant principally

to 120 months in the custody of the Bureau of Prisons to be followed by five (5)

years of supervised release with special conditions.  Dkt. 48.  Defendant's term of

supervised release commenced on February 11, 2022.  Dkt. 101.

On September 3, 2024, Defendant appeared before this Court and pleaded guilty to Charge #8 of the Third Amended Violation Petition filed against him, and on October 2, 2024, this Court sentenced Defendant principally to 10 months in the custody of the Bureau of Prisons to be followed by five (5) years of supervised release with special conditions. Dkt. 100.  Defendant's term of supervised release recommenced on January 1, 2025.  Dkt. 108, p.2.

On February 25, 2025, a new Violation Petition, alleging that Defendant violated three of the conditions of his supervised release was filed by his Probation Officer, *see*, Dkt. 108, and an arrest warrant was issued by Magistrate Judge Michael J. Roemer. Dkt. Entry, dated 2/25/25.  On March 24, 2025, the U.S. Marshals Service arrested Defendant, and on the following day, an Amended Violation Petition was filed charging Defendant with an additional violation his conditions of release.  Dkt. 109.

On March 25, 2025, the parties appeared before Judge McCarthy for an Initial Appearance on the Amended Petition. Dkt. 110.  At that time, the government moved to have Defendant detained pending any violation hearing, and Probation also recommended detention. *Id*.  Defendant sought to be released. *Id*.   Judge McCarthy ordered Defendant's release but stayed such release until Friday, March 28, 2025, at 12:00 p.m. *Id*.[1]  On March 26, 2025, Judge McCarthy issued a written D&O in which

---

[1] This Court subsequently extended the stay of Defendant's release until April 14, 2025. Doc. 113 and 118.

he determined that he "lack[ed] the authority to detain [Defendant] pending further proceedings." Dkt. 111.

## **DISCUSSION**

In his March 26, 2025, D&O, Judge McCarthy concluded that notwithstanding Fed. Rules Crim. Proc. Rule 32.1(a)(6)'s reference to 18 U.S.C. § 3143(a)(1), neither the Rule nor that statute provide the necessary authority to allow the Court to detain individuals charged with violating the conditions of their supervised release pending a revocation hearing. *See*, Dkt. 111. This court disagrees.

Judge McCarthy's D&O in this case follows two prior decisions in which he reached the same conclusion. *See*, *United States v. Clark*, No. 1:17-CR-0043-LJV-JJM, 2025 WL 875458 (W.D.N.Y. Mar. 21, 2025); *United States v. Wade*, No. 1:09-CR-260-WMS-JJM, 2025 WL 786383 (W.D.N.Y. Mar. 12, 2025). Judge McCarthy's seminal decision on the issue in *Wade* drew heavily from a decision authored by District Judge Stefan R. Underhill from the District of Connecticut. Indeed, Judge Underhill's decision in *United States v. Mercado*, No. 3:13-CR-181 (SRU), 2025 WL 297429 (D. Conn. Jan. 24, 2025), appears to be the first decision in the Circuit (if not the country)[2] to hold that neither 18 U.S.C. § 3143(a)(1), nor any other legislative Act of Congress provide the requisite Congressional authority—required under the Non-

---

[2] "Since the enactment of the Non-Detention Act over 54 years ago, *Mercado* appears to be the first—and only—decision in which a court has proposed the novel theory that the Non-Detention Act restricts a court's authority to detain individuals pending a hearing on revocation of supervised release." *United States v. Phillips*, No. CR-21-030 (JLR), 2025 WL 484706, at *2 n.3 (W.D.Wash. Feb. 13, 2025).

Detention Act, *see*, 18 U.S.C. § 4001(a)—to allow for the detention of a person on supervised release pending a hearing on a violation petition lodged against them. *See*, *Mercado*, 2025 WL 297429, at *1. In adopting Judge Underhill's view, Judge McCarthy rejected a decision from District Judge Meredith A. Vacca of this Court, *see*, *United States v. Malta*, 09-cr-6018, Dkt. 43 (W.D.N.Y. 2025), in which Judge Vacca reached the opposite conclusion as Judge McCarthy and Judge Underhill and determined that the Court does have the authority to detain an individual pending a supervised release revocation hearing. This Court agrees with Judge Vacca.

At the outset the Court observes that Taylor's entire argument—and Judge McCarthy's entire D&O—is predicated on the premise that there is no statutory authority to permit Taylor's detention pending any revocation hearing. Such view, flows from Judge McCarthy's determination, first espoused by Judge Underhill in his *Mercado* decision, that the Non-Detention Act, 18 U.S.C. § 4001(a), precludes this Court from making that determination. Judge McCarthy, citing the Non-Detention Act, *see*, 18 U.S.C. § 4001(a),[3] determined that "18 U.S.C. § 3143(a)(1) does not

---

[3] The Non-Detention Act states that "[n]o citizen shall be imprisoned or otherwise detained by the United States *except pursuant to an Act of Congress*." 18 U.S.C. § 4001(a)(emphasis supplied). The statute was enacted in 1971 "as part of a bill to repeal the Emergency Detention Act of 1950, 50 U.S.C. § 811 *et seq*., which provided procedures for executive detention, during times of emergency, of individuals deemed likely to engage in espionage or sabotage." *Hamdi v. Rumsfeld*, 542 U.S. 507, 517 (2004). At the time, Congress was concerned about the possibility that the Act could be used to reprise the Japanese-American internment camps of World War II. *Id*. (discussing legislative posture of the Non-Detention Act).

    In *Hamdi*, the Supreme Court considered whether an American citizen captured as alleged enemy combatant during military operations in Afghanistan could be lawfully detained. In claiming that the executive branch lacked the authority to detain him, *Hamdi* argued that his detention was forbidden pursuant to 18 U.S.C. § 4001(a). The government, in response argued, *inter alia*, that the Authorization for Use of Military

(and cannot apply) [sic] to alleged violations of supervised release, because it requires the court to 'order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ...be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." Dkt. 111, p.3.  According to Judge McCarthy's analysis, this Court at the time of the original sentence "made no such finding in June 2015, when [it] ordered Taylor to be released under supervision once he completed ten years of incarceration —nor could [it] have, because at that time it would have been impossible to predict whether Taylor would pose a risk of flight or danger to the community ten years later.  Thus, § 3143(a)(1) does not apply here." Dkt. 111, pp. 3-4 (footnote omitted). This Court disagrees.

### 1.  The Non-Detention Act

First, notwithstanding Judge McCarthy's finding that § 3143(a)(1) does not apply here—which this Court will address further below—this Court has reservations

---

Force (AUMF)—a Congressional resolution that empowered the President to "use all necessary and appropriate force against nations, organizations, or persons that he determines planned, authorized, committed, or aided in the September 11, 2001, al Qaeda terrorist attacks," *Hamdi*, 542 U.S. at 507 (quotations and citations omitted)—provided the appropriate Congressional authority required under § 4001. *Id.*, at 517. The Court agreed with the government and observed, "we conclude that the AUMF is explicit congressional authorization for the detention of individuals in the narrow category we describe, and that the AUMF satisfied § 4001(a)'s requirement that a detention be 'pursuant to an Act of Congress'." *Id.*, at 517 (parentheticals omitted).

as to whether the Non-Detention Act even may be properly applied in this situation. In that regard, this Court believes that even absent the authority granted under § 3143(a)(1), other Congressional acts vest this Court with sufficient authority to detain individuals to ensure compliance with its orders.  As the Second Circuit has recognized, "[t]he power to confine to coerce compliance with court orders is such a fundamental and well-established incident of judicial power that, in creating the lower federal courts, Congress implicitly vested them with that power..., this Court also has every reason to think that the requirements of the Non–Detention Act are also satisfied by 18 U.S.C. § 401, which should be understood to authorize imprisonment on findings of both civil and criminal contempt."  *Armstrong v. Guccione*, 470 F.3d 89, 103 (2d Cir. 2006); *see also, United States v. Phillips*, 2025 WL 484706, at *4.

Further, this Court had subject matter jurisdiction over Taylor's criminal case pursuant to 18 U.S.C. § 3231 because the count of conviction was an offense against the laws of the United States. "From the beginning of the Republic, federal judges, [have been] entrusted with wide sentencing discretion." *Concepcion v. United States*, 597 U.S. 481, 490 (2022)(quotation and citation omitted).  In this Court's view, the broad sentencing discretion which has long been entrusted to federal judges, *see, Concepcion*, 597 U.S. at 490, remains unbowed by the Non-Detention Act, since it appears that Congress likely never even intend that Act interfere with or restrict this Court's inherent authority sanction those who violate lawful conditions which it imposes as part of a criminal sentence. *See, Armstrong,*

6

470 F.3d at 105 ("In the event the Non–Detention Act applies to a federal court's power to enforce its orders by confinement, the enactment establishing those courts satisfied its requirement of a statute of Congress.").

In *Armstrong*, the Second Circuit, while "express[ing] no view on the point," did cite the following legislative history from the Non-Detention Act as supportive of the view—a view shared by this Court— "that Congress never intended for the Non–Detention Act to apply to a federal court's inherent power to enforce its orders by coercive civil confinement." *Id.*, n.2; *see also*, 117 Cong. Rec. 31,541 (1971) (statement of Rep. Poff) ("It is not the committee's intent to eliminate any detention practices presently authorized by statute or judicial practice and procedure .... Detentions incident to judicial administration such as those authorized by the judicial authority to maintain order in a courtroom, judicial contempt powers, and the judicial authority to revoke bail or parole, are not within the intendment of the committee's amendment."); *see also*, *id.*, at 32,145 (statement of Sen. Inouye) (explaining that the House bill "should be viewed as in no way granting authority to eliminate any detention practices now authorized by statute, judicial practice or procedure, such as ... judicial authorization to revoke bail or parole, or to detain those so as to maintain order in the courtroom"); *cf.*, *id.*, at 31,541 (statement of Rep. Kastenmeier) ("[The amendment] provides that there must be statutory authority for the detention of a citizen by the United States. Existing detention practices are left unaffected. Incarceration for civil and criminal contempt ... are already covered by statutes.").

Yet even assuming *arguendo* that the Non-Detention Act applies, this Court rejects Judge McCarthy's restrictive reading of § 3143(a)(1). Notwithstanding Judge McCarthy's suggestion that the statute might only be applied in those instances in which the sentencing Court clairvoyantly predicts Defendant's future behavior while on supervised release, *see*, Dkt. 111, pp. 3-4, such interpretation is unfounded. For the reasons which follow, this Court concludes that § 3143(a)(1)—an Act of Congress as that term is used in the Non-Detention Act—does provide the authority necessary to detain individuals pending a revocation hearing held pursuant to 18 U.S.C. § 3583(e)(3).

## 2. Supervised Release Generally

"Supervised release is 'a form of postconfinement monitoring' that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." *Mont v. United States*, 587 U.S. 514, 523 (2019)(quoting *Johnson v. United States*, 529 U.S. 694, 697 (2000)). Since supervised release constitutes a part of a person's penalty for their original offense, "the requirement that a defendant abide by the conditions of supervised release flows directly from the original sentence, [and] revoking a term of supervised release for violating such conditions is not a new criminal prosecution." *United States v. Peguero*, 34 F.4th 143, 161 (2d Cir. 2022); *see also*, *United States v. Vargas*, 564 F.3d 618, 624 (2d Cir. 2009) ("[defendant] cannot assert a double jeopardy claim based on [prior] revocation proceeding and judgment because jeopardy does not attach during supervised

release revocation proceedings."); *United States v. Amer*, 110 F.3d 873, 884 n. 5 (2d Cir.1997)(same).

In *United States v. Peguero*, 34 F.4th at 147, the Second Circuit recognized the following "indisputable facts" regarding supervised release. First, "a supervised release term is a component of the initial sentence for the underlying crime that can only be imposed after the defendant received the full constitutional protections afforded in a criminal prosecution and was adjudicated to be guilty." *Id*. Second, "as a result of the initial sentence, the maximum term of imprisonment that the defendant can face is his initial custodial sentence plus additional imprisonment for violations of supervised release up to the maximum term of supervised release authorized by statute for the underlying offense (subject to the exceptions in 18 U.S.C. § 3583(e)(3)). *Id*. (emphasis in original). Finally, "at the time of the initial sentence, the defendant's continued liberty after serving the imposed term of imprisonment on the underlying crime is conditioned upon complying with all of the terms of supervised release (including not committing new criminal conduct) during the period of such release." *Id*. In view of the foregoing, "there is no basis, either factually or legally, to classify a revocation of supervised release as a new 'criminal prosecution' that triggers all the constitutional protections afforded to such a prosecution. Instead, it is simply a revocation of the conditional liberty that was imposed by the judge as a component of the initial sentence, and thus, like a revocation of parole or probation, it need only comply with basic due process." *Id*.

Generally, the Second Circuit views "the revocation of supervised release as a sanction for the defendant's abuse of the court's trust in his agreeing to abide by the imposed conditions in order to be granted release instead of remaining incarcerated." *Villiers v. Decker*, 31 F.4th 825, 834 (2d Cir. 2022) . Moreover, a proceeding to revoke an individual's supervised release is "not [a] stage[] in a criminal prosecution" and as a result, it is "governed by standards less stringent than those governing criminal trials." *Id.*, at 833.

Notably, Judge Underhill, the author of the decision in *United States v. Mercado*, 2025 WL 297429—which, as noted previously, appears to be the seminal case in the Nation to hold that district courts lacks authority to detain a supervised releasees pending a revocation hearing (and a case relied upon extensively by Judge McCarthy in his trio of decisions)— was sitting by designation on the panel in *Peguero*, and was the lone dissenter in that case. *See*, *United States v. Peguero*, 34 F.4th at 165-179.

In addressing what the majority characterized as an "issue [that] was neither raised nor briefed by either party," *Id*., at 156, Judge Underhill, in *Peguero,* asserted *sua sponte* that "Section 3583(e)(3), which allows a judge to revoke supervised release based upon a finding of new criminal conduct, is unconstitutional." *Id.* The majority rejected Judge Underhill's contention and observed, "we conclude that the dissent's approach is unsupported by the Constitution itself in light of the clear and direct connection between a supervised release term (and its accompanying conditions) and the original conviction and sentence." *Id*., at 157. In this Court's

view, both Judge Underhill, in *Peguero* and *Mercado*, and Judge McCarthy, in his trio of recent decisions, err in failing to recognize the "direct connection between… supervised release term… and the original conviction and sentence." *Id*.  In this Court's view, the consequences—including potential detention—which arise from an alleged violation of the terms of supervised release, while flowing from the original sentence imposed on the underlying conviction, do *not* amount to new punishment.

In *Mercado*, Judge Underhill reasoned:

> Employing the original conviction to justify detention, however, would rely on a theory that Mercado could be punished a second time for the same conviction. Mercado was sentenced to ten years' imprisonment and five years' supervised release, not to ten years' imprisonment and an unspecified term of imprisonment to be imposed based on potential future events. Any such after-imposed, additional term of imprisonment, if treated as punishment for the original offense, would violate the constitutional guarantee against double jeopardy.

*Mercado*, 2025 WL 297429, at *3.  However, this Court finds Judge Underhill's analysis flawed and his double jeopardy concern to be unfounded.  In fact, then-Second Circuit Judge Sotomayor, writing for the majority, expressly rejected this view in *United States v. Pettus*, 303 F.3d 480 (2d Cir. 2002):  As Judge Sotomayor stated in *Pettus*:

> [A] violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment. *See Johnson v. United States*, 529 U.S. 694, 700 (2000)("[P]ostrevocation sanctions [are] part of the penalty for the initial offense...."); *United States v. Amer*, 110 F.3d 873, 884 (2d Cir. 1997). ***The requirement that a defendant only be punished once for a particular crime does*** not ***mean that this punishment cannot be modified or extended***. As the Supreme Court has held, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment

will turn out to be." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980).

*Id.*, at 487 (emphasis supplied).

### 3. Supervised Release Violations and § 3143(a)(1)

When presented with a supervised release violation petition, 18 U.S.C. § 3583(e)(3) directs the Court to follow the applicable Federal Rules of Criminal Procedure. Specifically, Federal Rule of Criminal Procedure 32.1(a)(6) governs a defendant's release or detention pending a hearing on an alleged violation of supervised release. *See* Fed. R. Crim. Pro. 46(d). Fed. R. Crim. Pro. 32.1(a)(6) provides that a person appearing before the Court for a violation of supervised release may be "releas[ed] or detain[ed] under 18 U.S.C. § 3143(a)(1) pending further proceedings." 18 U.S.C. § 3143(a)(1), in turn, states in pertinent part:

> [T]he judicial officer shall order that a person *who has been found guilty of an offense and who is awaiting imposition or execution of sentence* . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released. . ..

18 U.S.C. § 3143(a)(1)(emphasis supplied).[4] "The burden of establishing that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. Pro. 32.1(a)(6).

---

[4] Similarly, 18 U.S.C. § 3142(d)(1)(A)(ii), which addresses "[t]emporary detention to permit revocation of supervised release" provides, as applicable here, that a judicial officer shall order the temporary detention of person "If the judicial officer determines that...such person...is, and was at the time the offense was committed, on...release pending imposition...of sentence, appeal of sentence or conviction, or completion of sentence... and such person may flee or pose a danger."

Thus, by its plain language, 18 U.S.C. § 3143(a)(1) authorizes a Court to detain an individual: (1) "who has been found guilty of an offense;" and (2) who is "awaiting imposition or execution of sentence." If both criteria are met, then the statute confers upon the Court the authority to detain such person absent clear and convincing evidence that the person is not likely to flee or pose a danger to the community. The Second Circuit has recognized this authority as well. *See United States v. Grady*, 818 F. App'x 86, 88 (2d Cir. 2020) (noting "[r]evocation of supervised release proceedings are governed by Rule 32.1 of the Federal Rules of Criminal Procedure" and that "'pending further proceedings,' the judge 'may release or detain the person under 18 U.S.C. § 3143(a)(1)' " (citing Fed. R. Crim. P. 32.1(a)(6))).

### A. § 3143(a)(1) - "Guilty of an Offense"

Here, the offense for which Taylor has been found guilty—and the offense which satisfies the first prerequisite for the applicability of 18 U.S.C. § 3143(a)(1)—is Taylor's original offense of conviction, *to wit*, Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Clearly, as Judge Sotomayor recognized in *Pettus*, this Court retains its authority to "modify[] or extend[]" Taylor's punishment for that offense even after he was placed on supervision, and Taylor did not have the right to know, nor does this Court have the obligation to forecast —despite Judge McCarthy's suggestion to the contrary[5]—exactly what punishment might await in the

---

[5] In his D&O, Judge McCarthy rejected the notion that §3143(a)(1) has any applicability to this case, since this Court, in imposing its original sentence in June of 2015 and ordering defendant to be released under supervision once he completed ten years of

event that Taylor is alleged to have violated the terms and conditions of his supervised release.

Indeed, "[t]hough supervised release is part of the penalty for the initial offense, the imposition of supervised release and the sanctions for violation are authorized by a statute and Guidelines scheme that is separate from the regime that governs incarceration for the original offense, and the supervised release scheme serves purposes distinct from the goals of the original punishment*." United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005)(citations and quotations omitted).

Both the Supreme Court and the Second Circuit have recognized that not only do the terms and conditions of supervised release imposed—but also any sanctions which flow from the alleged violation of those terms and conditions—relate back to the supervisee's original conviction and sentence. *See,  United States v. Haymond*, 588 U.S. 634, 648 (2019)("[t]he defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime."); *McNeil*, 415 F.3d at 277 (supervised release "is authorized by the original conviction, and so too are the consequences of its violation.").

Furthermore, to the extent that the Second Circuit has recognized that the Judges retain the authority to "modif[y] or extend[]" the original punishment, *id.*, and that 18 U.S.C. § 3583(e) delineates the process to be followed in order to do so, this

---

incarceration, failed to make any finding to "predict whether Taylor would pose a risk of flight or danger to the community ten years later." Dkt. 111, pp. 3-4.

Court easily concludes that individuals, such as Defendant, who have been alleged to have violated the terms and conditions of their supervised release stand before the Court as individuals who have been "found guilty of an offense" as required under § 3143(a)(1).

### B. § 3143(a)(1) - "Awaiting Imposition or Execution of Sentence"

Having concluded that one on supervised release has necessarily "been found guilty of an offense," *see*, 18 U.S.C. §3143(a)(1), when such individual is charged, as Taylor is here in a sworn petition that alleges a violation of the terms and conditions of supervised release previously imposed by this Court, this Court also has little difficulty concluding that such supervisee also stands before this Court as one who is also "awaiting imposition or execution of sentence." *Id*.

18 U.S.C. § 3586 provides that "[t]he implementation of a sentence of imprisonment is governed by the provisions of subchapter C of chapter 229 and, if the sentence includes a term of supervised release, by the provisions of subchapter A of chapter 229." That subchapter, in turn, provides, in pertinent part, that "[a] person who has been … placed on supervised release pursuant to the provisions of section 3583, shall, during the term imposed, be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3601. Supervised release begins and ends with the judiciary, and as already recognized, the Court is authorized to impose sanctions when a person on supervision violates the trust which the Court has placed in them. Supervised release "revocation assesses the betrayal of court trust evidenced by the violation. It

is for this reason that a defendant may be both punished for the supervised-release violation and prosecuted criminally for the same conduct without implicating principles of double jeopardy." *United States v. Edwards*, 834 F.3d 180, 195–96 (2d Cir. 2016)(quotations and citations omitted). Indeed, "the very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the conditional liberty he was granted following his conviction of the underlying offenses." *United States v. Ramos*, 979 F.3d 994, 1001 (2d Cir. 2020) (quotations and alterations omitted); *see also, United States v. McLarty*, No. 22-1984, 2024 WL 3219488, at *2 (2d Cir. June 28, 2024)("the point of a revocation sentence is to sanction the defendant's breach of trust as opposed to his underlying conduct.")(quotations omitted).

Probation officers, who are charged with monitoring those who are on supervised release, *see*, 18 U.S.C. §§ 3601, 3603, work "under the direction of the Court." 18 U.S.C. § 3602(a). "[T]he extensive supervision mission of federal probation officers [in monitoring individuals on supervised release] includes *executing* the sentence but not imposing it*." United States v. Kunz*, 68 F.4th 748, 765 (2d Cir. 2023)(citations and quotations omitted)(emphasis added). In view of the foregoing, this Court determines that monitoring compliance and sanctioning non-compliance of the terms and conditions of supervised release relate to "the imposition [and] execution of [the original] sentence," as described in § 3143(a)(1).

Having thus found that Taylor, who is the subject of a violation petition filed by a probation officer alleging a violation of the terms and conditions of a previously

imposed term of supervised release necessarily meets § 3143(a)(1)'s criteria as one who "has been found guilty of an offense" and is "awaiting imposition and execution of sentence," this Court concludes that such statute applies here and imbues this Court with sufficient authority to allow it to detain Taylor pending a final disposition, pursuant to § 3583(e), of the violation petition pending against him.[6]  As the Ninth Circuit has recognized:

> By the plain language of the statute, supervised release, although imposed in addition to the period of incarceration, is "***a part of the sentence***." 18 U.S.C. § 3583(a); *see United States v. Montenegro–Rojo*, 908 F.2d 425, 432 (9th Cir.1990). Congress' primary objective in enacting § 3583 was to authorize a period of supervision, and perhaps imprisonment, beyond what is provided by the sentencing guidelines and substantive criminal laws. ***Thus, the entire sentence, including the period of supervised release, is the punishment for the original crime, and "it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms" of his release***. *United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993).

*United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995)(footnote omitted)(emphasis added).  Thus, whenever an individual serving a term of supervised release appears before the Court to answer for alleged violations of his or release conditions, such proceeding necessarily involves an individual who "has been found guilty of an offense" and is "awaiting imposition and execution of sentence." Thus, § 3143(a)(1) applies.

---

[6] At the outset of his D&O, Judge McCarthy determined that Taylor failed to carry his burden, under Rule 32.1(b)(6) of Federal Rules of Criminal Procedure and 18 U.S.C. § 3143(a)(1),  of establishing his entitlement to release. Dkt. 111, p.1.  This Court accepts that determination.

### 4.  Rule 32.1 of the Federal Rules of Criminal Procedure

Further, this Court also rejects Judge McCarthy's effort to  marginalize the import of Rule 32.1.  Specifically, Judge McCarthy asserts that such Rule does not "itself create the right to detain Taylor…because procedural rules 'do not provide substantive rights.'"  Dkt. 111. Pp. 2-3.  His view, however, fails to recognize the necessary interplay between the Federal Rules of Criminal Procedure and Acts of Congress.  "'Despite the delegation of authority to make rules, via the Rules Enabling Act, Congress maintains an integral, albeit passive, role in implementing any rules drafted by the Court. For example, all such rules are subject to review by Congress; they take effect only after the Supreme Court has presented them to Congress and after Congress has had seven months to review proposed rules or changes.'"  *United States v. Chen*, 257 F. Supp. 2d 656, 662, n.21 (S.D.N.Y. 2003) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 134 (5th Cir. 1996)).  "In interpreting Federal Rules of Criminal Procedure, [the] court may, if necessary, look beyond text to other traditional tools of statutory interpretation, including Rule's structure, purpose, and legislative history."  *In re Capitol Breach Grand Jury Investigations Within D.C.*, 339 F.R.D. 1 (D.D.C. 2021).

The Federal Rules of Criminal Procedure, once effective, have the force and effect of law, *see United States v. Marion*, 404 U.S. 307, 319 (1971), and consequently, the courts apply "traditional tools of statutory construction" to interpret them. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (internal quotation marks omitted). When interpreting the language used, words and phrases must not

be read in isolation, but with an eye toward the "purpose and context of the statute."

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486  (2006).  Further, as the Supreme

Court has recognized, in view of the vetting which takes place vetted prior to their

approval, the Rules enjoy "presumptive validity under both the constitutional and

statutory constraints."   *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 6 (1987). So, it is

unsurprising that the Supreme Court has, as Justice Scalia noted, "rejected every

statutory challenge to a Federal Rule that has come before" it.  *Shady Grove*

*Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010).

Here, as part of the Sentencing Reform Act of 1984, Congress abolished

federal parole and replaced it with supervised release. See Pub. L. 98-473 tit. II, ch.

II, 98 Stat. 1987. Initially, a violation of supervised release could be treated as

contempt of court, among other remedies; however, Congress, in 1986, added

revocation as a possible sanction for violating supervised release through the

passage of the Anti-Drug Abuse Act of 1986 ("ADAA"). See Pub. L. 99-570, 100 Stat.

3207. Specifically, under the ADAA, a court is authorized to:

> revoke a term of supervised release, and require the person to serve in
> prison all or part of the term of supervised release without credit for time
> previously served on postrelease supervision, if it finds by a
> preponderance of the evidence that the person violated a condition of
> supervised release, *pursuant to the provisions of the Federal Rules of
> Criminal Procedure that are applicable to probation revocation* and to the
> provisions of applicable policy statements issued by the Sentencing
> Commission.

*Id*. § 1006(a)(3) (codified at 18 U.S.C. § 3583(e)(3)(emphasis supplied)).  Thus,

since at least 1986, Congress, in specifically referencing the Federal Rules of

Criminal Procedure, has envisioned that those who violate supervised release would

receive the process prescribed by those Rules. *See, e.g.*, *United States v. Morales*, 45 F.3d 693, 697 (2d Cir. 1995)(noting in the context of a revocation proceeding under 18 U.S.C. § 3583(e)(3) that such statute's reference "to the procedural rules governing probation revocation makes clear that Congress expected that those who violate the conditions of their supervised release would be afforded a revocation hearing before supervised release is revoked.").

On November 1, 1987, when the statutory framework of supervised release, including the aforementioned revocation provisions of the ADAA, came into effect, Rule 32.1(a)(1) read, in pertinent part:

> Whenever a probationer is held in custody on the ground that the probationer has violated a condition of probation, the probationer shall be afforded a prompt hearing . . . in order to determine whether there is probable cause to hold the probationer for a revocation hearing. . . .
>
> . . . If probable cause is found to exist, the probationer shall be held for a revocation hearing. The probationer may be released pursuant to Rule 46(c) pending the revocation hearing. If probable cause is not found to exist, the proceeding shall be dismissed.

Fed. R. Crim. P. 32.1(a)(1), 18 U.S.C.A. App. (1987).  Federal Rule of Criminal Procedure Rule 46(c), in turn, provided that: "Eligibility for release pending sentence or pending notice of appeal or expiration of the time allowed for filing notice of appeal, shall be in accordance with 18 U.S.C. § 3143. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c), 18 U.S.C.A. App. (1987).  Consequently, since Congress first created revocation as a possible sanction for a violation of supervised release, Congress clearly expected that the

determination of whether a person would be held pending a revocation hearing
would be made in accordance with the provisions of 18 U.S.C. § 3143.

In 1994, the revocation provision in 18 U.S.C. § 3583(e) was rewritten by
Congress to allow a court to:

> revoke a term of supervised release, and require the defendant to
> serve in prison all or part of the term of supervised release authorized
> by statute for the offense that resulted in such term of supervised
> release without credit for time previously served on postrelease
> supervision, if the court, *pursuant to the Federal Rules of Criminal*
> *Procedure applicable to revocation of probation or supervised release*,
> finds by a preponderance of the evidence that the defendant violated a
> condition of supervised release. . ..

Pub. L. 103-322, § 110505(2)(b), 108 Stat. 1796, 2016-17 (codified at 18 U.S.C. §
3583(e)(3)) (emphasis added).

While Rule 32.1(a)(1) initially remained materially unchanged—reflecting only
a minor addition of the term "supervised release" to conform the rule to the statute,
*see* Fed. R. Crim. P. 32.1, 18 U.S.C.A. App. (1994)—in 2002, the Rule was
"completely revised and expanded." Fed. R. Crim. P. 32.1, Advisory Committee
Notes to 2002 Amendments. Rule 32.1(a)(1)(6) was added—incorporating language
from Rule 46(c)—so that it now read:

> The magistrate judge may release or detain the person under 18
> U.S.C.§ 3143(a) pending further proceedings. The burden of
> establishing that the person will not flee or pose a danger to any other
> person or to the community rests with the person.

Fed. R. Crim. P. 32.1(a)(1)(6), 18 U.S.C.A. App. (2003). Rule 32.1(a)(6) was again
amended in 2010 "to end confusion regarding the applicability of 18 U.S.C. §

3143(a) to release or detention decisions involving persons on probation or supervised release." 2010 Advisory Committee Note to Rule 32.1(a)(6).

Judge McCarthy, citing several civil cases, reasons that "[s]ince the Rule [32.1(a)(6)] specifies 18 U.S.C. § 3143(a)(1) as the source of my authority to detain Taylor, I may not look elsewhere for that authority, even if it exists, because the 'mention of one thing implies the exclusion of another.'" Dkt. 111, p. 3 (footnote and citation omitted). While this Court believes that 18 U.S.C. § 3143(a)(1) does provide the appropriate authority to detain Taylor, this Court believes that Judge McCarthy's rationale overlooks the import of the fact that: (1) Congress, in enacting legislation (18 U.S.C. §3583(e)) to permit revocation as a consequence for a violation of supervised release, specifically directed that the procedures to be followed were those referenced in the Federal Rules of Criminal Procedure; and (2) that those same Federal Rules of Criminal Procedure—since at least the inception of the Congressional grant of authority to Courts authorizing them to revoke supervised release—have explicitly referenced 18 U.S.C.§ 3143(a) as the statute by which release/detention determinations should be made. In this Court's view, such longstanding interplay between the Rules and the statute further supports this Court's view that Congress intended 18 U.S.C.§ 3143(a), in concert with Rule 32.1(a)(6), to provide the appropriate authorization and procedures for courts to utilize to make custody determinations regarding supervisees pending revocation hearings. *See e.g., United States v. Giannetta*, 695 F.Supp. 1254, 1256 (D.Me. 1988)("The pertinent provisions of 18 U.S.C. § 3143, as applicable in these

revocation proceedings, equate the probationer's situation to that of a defendant convicted and awaiting imposition of sentence."); *see also United States v. Loya*, 23 F.3d 1529, 1530 (9th Cir. 1994)("Rules 32.1 and 46(c) provide statutory authorization for bail pending the revocation hearing and direct that the motion be adjudicated in accordance with the provisions of 18 U.S.C. § 3143.").

Finally, Judge McCarthy's interpretation of Rule 32.1(a)(6), renders the Rule meaningless. As such, his interpretation violates "the cardinal rule" that "statutory language must be read in context" and that its provisions interpreted to "effectuate all its provisions, so that no part is rendered superfluous." *Hibbs v. Winn*, 542 U.S. 88, 89 (2004). "The Federal Rules of Criminal Procedure were designed to provide a uniform set of procedures to govern criminal cases within the federal courts consistent with the requirements of justice and sound administration. Where previously recognized powers were thought appropriate for inclusion in the rules, this was expressly done." *United States v. Weinstein*, 452 F.2d 704, 715 (2d Cir. 1971). In the end, this Court finds no legal or logical justification to abrogate the well-settled procedure in this Circuit, whereby "[r]evocation of supervised release proceedings are governed by Rule 32.1 of the Federal Rules of Criminal Procedure," and that upon an initial appearance for an alleged violation for supervised release, "'pending further proceedings,' the judge 'may release or detain the person under 18 U.S.C. § 3143(a)(1).' Fed. R. Crim. P. 32.1(a)(6)." *United States v. Grady*, 818 F. App'x at 88.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Defendant can be and should be detained, and the matter is remanded back to Judge McCarthy for further proceedings.

**SO ORDERED**.

*S/ Richard J. Arcara*
_____
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE


Dated:  April  10, 2025
      Buffalo, New York